**NOT FOR PUBLICATION**



UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                             :        **Order Filed on December 5,**
In re:                                       :        **2019 by Clerk, U.S. Bankruptcy**
                                             :        **Court - District of New Jersey**
                                             :    CHAPTER 11
MRPC CHRISTIANA, LLC,                         :
                                             :
          Debtor.                            :
                                             :    CASE NO.:    18-26567 (SLM)
                                             :
_____      :
                                             :
MRPC CHRISTIANA, LLC, *et al.*,               :
                                             :    ADV. NO.:    19-01053 (SLM)
          Plaintiff,                         :
                                             :
v.                                           :
                                             :
CROWN BANK,                                   :
                                             :
          Defendant.                         :
_____      :


**OPINION**

**APPEARANCES :**

Richard D. Trenk, Esq.
Robert S. Roglieri, Esq.
McManimon Scotland & Baumann, LLC
75 Livingston Avenue, Suite 201
Roseland, NJ 07068

Jeffrey A. Cooper, Esq.
Barry J. Roy, Esq.
Rabinowitz Lubetkin & Tully, LLC
293 Eisenhower Parkway, Suite 100
Livingston, NJ 07039

David Anthony, Esq.
Berger Harris, LLP
1105 North Market Street, 11th Floor
Wilmington, DE 19801

Warren A. Usatine, Esq.
Ryan T. Jareck, Esq.
Cole Schotz, P.C.
25 Main Street
Court Plaza North
Hackensack, NJ 07601

**STACEY L. MEISEL, UNITED STATES BANKRUPTCY JUDGE**

## INTRODUCTION

This matter comes before the Court on a request for extraordinary relief.  Parties in interest Paresh K. Patel, Ranjan P. Patel, Chirag Patel, Paresh Patel and Ranjan Patel Irrevocable Trust, Krishnas LLC, Ganesa LLC, and BWI MRPC Hotels, LLC (collectively, the "**Patel Parties**") seek permission to challenge the Final DIP Order[1] in this confirmed Chapter 11 case.  Specifically, the Patel Parties seek to continue their pre-petition efforts to challenge Crown Bank's pre-petition liens or claims.  Creditor Crown Bank, who is also the DIP lender, seeks to enjoin the Patel Parties from attacking the protections granted to it in the Final DIP Order.

Any attempt to modify or revoke financing orders are heavily scrutinized because these orders are typically the lifeblood of a debtor-in-possession's reorganization efforts.  As such, this

Court examined this case's long and arduous procedural history to determine whether the Patel

Parties are entitled to such relief.  After reviewing transcripts of hearings and pleadings from four

court dockets spanning different jurisdictions, the Court concludes the Patel Parties failed to merit

the extraordinary relief they seek.  The Patel Parties neither set forth a legal basis nor equitable

grounds to establish a basis to disregard the Final DIP Order.  Despite being present and active in

this case's proceedings, the Patel Parties failed to timely challenge the protections granted in the

Final DIP Order or to appeal the Order itself.  In short, the Patel Parties missed their opportunity

and are enjoined from any further attempts to challenge Crown Bank's liens or claims allowed by

this Court.

## JURISDICTION AND VENUE

This Court has jurisdiction over this matter under 28 U.S.C. § 1334(b) and the Standing

Orders of Reference entered by the United States District Court for the District of New Jersey

dated July 23, 1984 and amended on September 18, 2012.  This motion calls upon the Court to

review and enforce an order it previously entered.  The Bankruptcy Court has jurisdiction to

interpret and enforce its own orders.[2]  A Court exercises its powers pursuant to 11 U.S.C. § 105(a)

to enforce and implement its prior orders.[3]  This matter constitutes a core proceeding pursuant to

28 U.S.C. §§ 157(b)(2)(A) and (D) as it concerns the administration of the estate and enforcement

of an order in respect to obtaining credit.  Venue is proper in this Court under 28 U.S.C. § 1408.

The Court issues the following findings of fact and conclusions of law pursuant to Federal Rule of

Bankruptcy Procedure 7052.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

**The Delaware Action**

On January 31, 2015, MRPC Christiana, LLC ("**MRPC**" or "**Debtor**") and the Patel Parties

filed a complaint, which was later amended against Crown Bank in the Superior Court of Delaware

(the "**Delaware Action**").[4]  Crown Bank filed an answer to the initial complaint and an answer to the amended complaint that asserted twenty-one counterclaims.[5]  The Delaware state court held a bench trial for a total of ten days beginning on August 1, 2016 spanning through January 6, 2017.[6]  After the trial, but before a decision, MRPC granted mortgages on its real property in favor of Paresh K. Patel and Ranjan P. Patel.[7]

On December 26, 2017, the Delaware state court issued a written opinion and rendered a decision in favor of Crown Bank awarding a judgment of $19,589,758.87 to Crown Bank (the "**Delaware Judgment**").[8]  The Delaware state court also awarded Crown Bank an additional $422,323.85 for attorneys fees and costs advanced in connection with the parties' litigation.[9]

The Patel Parties filed a post-trial motion in the Delaware Action on July 23, 2018, seeking relief from the Delaware Judgment under Delaware Superior Court Rules 59 and 60 (the "**Original 59 and 60 Motion**").[10]  On October 10, 2018, during the pendency of Debtor's bankruptcy and unbeknownst to this Court, the Delaware state court ruled on a motion before it that the automatic stay does not apply to the Patel Parties and Crown Bank, reasoning that they are non-debtor parties.[11]  The Delaware state court entered a scheduling order requiring Crown Bank to file an answering brief to the Original 59 and 60 Motion by no later than noon on November 9, 2018.[12]

**The New Jersey Action and Transfer of Ownership**

On January 18, 2018, Crown Bank filed an action for a preliminary injunction in the Superior Court of the State of New Jersey, seeking to foreclose on its security interest in MRPC (the "**NJ Action**").  The Patel Parties removed the NJ Action to the United States District Court for the District of New Jersey.[13]  The district court entered an order on April 11, 2018 that: (1) granted Crown Bank's preliminary injunction; and (2) determined that as of April 16, 2018, Crown Bank owned 100% membership interests in Debtor.[14]

4

**The Chapter 11 Case**

On August 17, 2018, the Debtor filed a voluntary petition under Chapter 11 of the United

States Code (the "**Bankruptcy Code**") in the District of New Jersey.[15]

**First Day Hearings**

The Court heard expedited motions on August 23, 2018, commonly referred to as "First

Day" matters.  On August 28, 2018, the Court held a hearing on the DIP Financing Motion.[16]

During the hearing, one of the Debtor's creditors, Access Point Financial, Inc. ("**Access Point**"),

argued that the Court did not need to approve the DIP Financing Motion so quickly.  Debtor filed

a substantially Amended Proposed Interim DIP Order one day before the hearing and Access Point

asserted, among other things, parties needed more time to review.  The Proposed Amended Interim

DIP Order provided a whole menu of protections for the lender Crown Bank including recognitions

of the debt, lien waivers, and a stipulation that Debtor has no causes of action against Crown

Bank.[17]  Access Point argued the Amended Proposed Interim DIP Order was being utilized as a

means to roll up Crown Bank's liens.  To rebut this argument, Debtor pointed to certain language

in the Amended Proposed Interim DIP Order in paragraph 16 that reads as follows:

> [T]he entry of this Order is without prejudice to the right of any party
> in interest, including the Committee, if any, appointed in these
> Chapter 11 cases, to challenge the prepetition liens of the DIP
> Lender, to the extent such a right exists; provided, however, any
> challenges to the validity, extent or priority of the liens or claims of
> the DIP Lender, including the assertion of any claims under sections
> 510, 544, 547 or 548 of the Bankruptcy Code (collectively,
> "Challenges") must be commenced, subject to obtaining standing,
> within sixty (60) days after the appointment of the Committee, but
> in no event later than within seventy-five (75) days from the Petition
> Date (the "Challenge Deadline"). Any and all Challenges by any
> party (including any chapter 11 or chapter 7 trustee) shall be forever
> barred unless brought by the Committee on or before the Challenge
> Deadline. [18]

Debtor further explained that the Amended Proposed Interim DIP Order does not grant or withhold standing, just simply requires the creditor to come to this Court to prove standing. After listening to the parties, the Court required Debtor to add language that extended the Debtor's proposed timeline for challenges and providing proper notice to interested parties. The Court further required Debtor to preserve rights for an appointed trustee, if any, pending the entry of a final order. With those changes, the Court entered the First Interim DIP Order.[19]

### Access Point's Motion to Appoint Trustee and the Patel Parties' Joinder

On September 10, 2018, Fox Rothschild LLP (the "**Patel Parties' Former Counsel**") filed a Notice of Appearance in the main case on behalf of the Patel Parties and BCD Associates, LLC ("**BCD**"), another creditor in the case.[20] Access Point filed a Motion to Appoint Trustee arguing that cause existed to appoint a trustee and that appointment of a trustee was in the best interest of the creditors.[21] BCD and the Patel Parties filed a Joinder to Appoint a Trustee.[22] In doing so, the Patel Parties noted that "[t]he struggle between the Patels and Crown continue in the Delaware court where certain rulings are being challenged by the Patel Parties through recently filed post-trial motions."[23]

### The Second Interim DIP Order Hearing

On September 13, 2018, the Court held a hearing[24] on: (1) the Utility Motion; (2) the Motion For Administrative Fee Order; (3) the Trenk Retention Application; (4) the Second Interim DIP Order; and (5) the Second Interim Cash Collateral Order.[25] Importantly, only Access Point filed an objection to the DIP Financing Motion.[26] To address Access Point's objection, Debtor added terms to reserve certain rights for Access Point.[27] That same day the Court entered the Second Interim DIP Order, which incorporated the Court's findings at the hearing conducted on August 28, 2018 and the First Interim DIP Order.[28]

### The Mediation Request

On September 21, 2018, Debtor filed a letter addressed to the Court requesting the Court appoint a mediator (the "**Mediation Request**").[29]  The Mediation Request was made in response to an adversary proceeding initiated by the Debtor against numerous creditors and in light of pending contested matters.[30]  The contested matters included the Motion to Appoint Trustee, the DIP Financing Motion, and the Sale Procedures Motion.[31]  Crown Bank filed a letter in support of Debtor's Mediation Request.[32]  In response to the Mediation Request, the Patel Parties' Former Counsel filed a letter on behalf of the Patel Parties and BCD.[33]  The letter stated that the Patel Parties and BCD oppose the notion of mediation for the contested matters.  They also requested that if the Court orders mediation, that they be included as full participants and that the mediation be held in an expeditious manner.[34]

During a teleconference addressing the Mediation Request, the Debtor requested an adjournment of the contested matters.  Crown Bank agreed with the request and noted there was "productive movement" between the parties.  Crown Bank indicated that with mediation and time, it was cautiously optimistic that some issues could be resolved.  Access Point raised concerns about the adjournment request as its Motion to Appoint Trustee[35] was still pending and the period to challenge Crown Bank's liens or claims was set to expire on October 31, 2018.  Access Point explained that if a trustee was appointed, there would be little time left under the current challenge period to challenge Crown Bank's liens or claims.  Further, Access Point indicated that should it need to challenge, there would be even less time to seek standing from the Court in order to assert the challenge.  The Patel Parties' Former Counsel noted that the Patel Parties had no objection to the Court ordering mediation as long as the Patel Parties and BCD were able to fully participate in

the mediation and benefit from any extension of the challenge deadline. Ultimately, the parties

agreed to mediation, which was conducted by the Honorable John K. Sherwood.

### Third Interim DIP Order

On October 2, 2018, the Court entered the Third Interim DIP Order, which embodied an

agreement amongst various parties—including the Patel Parties—to permit, among other things,

the Debtor to continue to receive DIP financing.[36]   The Third Interim DIP Order amended

paragraph 16 of the First Interim DIP Order to: (1) add 11 U.S.C. § 502 to the defined challenges;

(2) extend the challenge deadline to November 14, 2018; and (3) create certain exceptions for a

trustee should one be appointed in this case.[37]

### The Fourth Interim DIP Order and the Proposed Access Point Settlement Hearing

On October 11, 2018, this Court held a hearing on the Fourth Interim DIP Order and on

Debtor's Motion to Approve Post-Petition Retainer.[38]   The Patel Parties' Former Counsel appeared

telephonically.  As of the date of the hearing, only Access Point had objected to the DIP Financing

Motion.[39]   At the hearing, Crown Bank, Access Point, and Debtor informed the Court that they

reached a settlement as a result of the mediation.  The proposed settlement resolved pending issues

between Crown Bank, Access Point, and the Debtor, but carved out certain ongoing issues that are

irrelevant to this decision.  The term sheet was read into the record.  The parties also advised the

Court that the proposed settlement was contingent on the Court denying the appointment of a

trustee.  Before the hearing concluded, the Court asked the Patel Parties' Former Counsel if he had

anything to add.  Counsel responded: "I don't have anything that I wish to add."[40]   That same day,

the Court entered the Fourth Interim DIP Order.[41]

**UST's Motion to Appoint Trustee, Patel Parties' Joinder and Omnibus Objection, and Fifth Interim DIP Order**

The acting United States Trustee filed the UST's Motion to Appoint Trustee.[42]  On October 19, 2018, BCD and the Patel Parties filed a Joinder and Omnibus Objection that joined the UST's Motion to Appoint Trustee.[43]  The Patel Parties again elected to join a motion filed by another party rather than file an independent motion.  The Joinder and Omnibus Objection opposed the Access Point Settlement Motion,[44] which resolved, among other things, Access Point's Motion to Appoint Trustee.  The Joinder and Omnibus Objection also broadly opposed all other pending motions for final orders scheduled for hearings on October 25, 2018.[45]  The Joinder and Omnibus Objection referenced the Delaware Action and attached the Original 59 and 60 Motion as an exhibit.[46]  The Joinder and Omnibus Objection outlined five areas of concern and highlighted the same question repeatedly.  *"**Who will look into this and fight to enforce the rights and interests of the competing lien holders and unsecured creditors?  It cannot be expected to be the Debtor with Mr. Rodrigues in charge!**"*[47]

On October 25, 2018, Rabinowitz, Lubetkin & Tully, LLC (the "**Patel Parties' Current Counsel**") substituted its appearance for the Patel Parties' Former Counsel and filed Notices of Appearance on behalf of the Patel Parties.[48]  That same day, the Court held a hearing on the following: (1) the UST's Motion to Appoint Trustee; (2) the Access Point Settlement Motion; (3) the DIP Financing Motion seeking a final order; (4) the Cash Collateral Motion seeking a final order; (5) the Bidding Procedures Motion; and (6) the Independent Manager Motion.[49]  At the onset of the hearing, Patel Parties' Former Counsel withdrew its appearance on the record as counsel for the Patel Parties, but continued its representation of BCD.  The Patel Parties' Current Counsel, along with one of the Patel Parties, were present in Court.  BCD, Debtor, and Crown

Bank announced to the Court that they reached a settlement, which left the Patel Parties as the only remaining party on the Joinder and Omnibus Objection.

As part of its presentation, Crown Bank directly addressed the Patel Parties' questions about who will carry the flag and who will challenge Crown Bank's liens or claims. In response, Crown Bank cited to the DIP Financing Orders, which permit any party in the case to challenge Crown Banks liens or claims so long as they first obtain standing. Crown Bank issued an open invitation for anyone to challenge Crown Bank's liens or claims. Crown Bank specifically used the Patel Parties and the Delaware Action as an example of a potential challenge and stated that the Patel Parties ". . . have pending challenges on the claim. If they want to come before Your Honor, seek standing, and say the Delaware court missed it by $4 million [. . .] they can come in here and do that."[50]

After considering the arguments, the Court issued an oral decision denying the UST's Motion to Appoint Trustee, carried the remaining five matters to November 1, 2018, and then issued a bench ruling that extended the cash collateral and DIP financing up to and including November 1, 2018. As a result of the bench ruling, the Court entered the Fifth Interim DIP Order on October 26, 2018.[51]

### **Entry of the Final DIP Order and Approval of the Access Point Settlement**

On November 1, 2018, the Court held a hearing on the following: (1) the Access Point Settlement Motion; (2) the Independent Manager Motion; (3) the Final DIP Order; (4) the Final Cash Collateral Order; and (5) the Sale Motion.[52] Debtor announced that all remaining objections to those motions were resolved.

This prompted the Court to query the Patel Parties' Current Counsel, who was present at the hearing. The Patel Parties' Current Counsel advised that he believed the retention was only

for the October 25, 2018 hearing.  The Patel Parties' Current Counsel then stated, to the extent the

Patel Parties objections in the Joinder and Omnibus Objection still stand, they were not withdrawn.

So, the Court overruled the Patel Parties' objections and entered the Final DIP Order.[53]  The Final

DIP Order set forth the following:

> [t]he entry of this Final Order is without prejudice to the right of any
> party in interest, including the Committee, if any, appointed in this
> Chapter 11 case, to challenge the prepetition liens and claims of
> Crown Bank, to the extent such a right exists; provided, however,
> any challenges to the validity, extent or priority of the liens or claims
> of Crown Bank, including the assertion of any claims under sections
> 502, 510, 544, 547 or 548 of the Bankruptcy Code (collectively,
> "Challenges") must be commenced, subject to obtaining standing,
> on or before November 28, 2018 (the "Challenge Deadline"), unless
> otherwise extended by the Court. Any and all Challenges by any
> party in interest with standing (including any chapter 11 or chapter
> 7 trustee appointed in this case) shall be forever barred unless
> brought by a party in interest with standing (including any chapter
> 11 or chapter 7 trustee appointed in this case) on or before the
> Challenge Deadline. [54]

The Final DIP Order established the deadline to challenge Crown Bank's claim as November 28,

2018 (the "**Challenge Deadline**").  The Final DIP Order established Crown Bank's allowed claim

against the estate in the amount of $17,618,599.39.[55]  The Court also entered an Order Approving

the Access Point Settlement, thereby resolving the previously filed objections by Access Point.[56]

No one appealed any of the DIP financing orders or sought any relief under Federal Rules of Civil

Procedure 59 and 60(b), made applicable to the bankruptcy court by Federal Rules of Bankruptcy

Procedure 9023 and 9024.

Two weeks after entry of the Final DIP Order—but before the Challenge Deadline—on

November 14, 2018, Paresh K. Patel filed an unsecured claim in the Debtor's case for

$1,888,916.81, based on a guarantee on a note.[57]

**Crown Bank's Removal of the Delaware Action**

On November 7, 2018, Crown Bank filed a *Notice of Removal* to remove the Delaware Action from the Delaware State Court to the United States District Court for the District of Delaware.[58]  The Patel Parties filed a *Motion for Permissive Abstention, or, in the Alternative, for Remand* (the "**Remand Motion**") in response to the *Notice of Removal* filed by Crown Bank.[59] Notably, the Patel Parties argued in the Remand Motion that Debtor failed to establish the federal court has statutory subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b) to decide the removed action.  Crown Bank filed opposition to the Remand Motion and the Patel Parties filed a reply.[60]  On November 30, 2018, Crown Bank then filed a motion to transfer the venue of the Delaware Action from the Delaware District Court to the United States District Court for the District of New Jersey.[61]  On January 24, 2019, by stipulation and order, the New Jersey District Court referred the matter to the United States Bankruptcy Court for the District of New Jersey.[62]

This Court held a hearing on February 14, 2019 on the Remand Motion.  At the hearing, the parties informed the Court they came to an agreement and would submit a consent order that withdraws the Remand Motion.  The parties also agreed to establish consensual dates for the Patel Parties to file a motion under Federal Rules of Civil Procedure 59 and 60 with this Court.  At that hearing, Crown Bank expressly stated that while it agreed to scheduling dates, it reserved all of its rights to object to the relief sought by the Patel Parties because as per Crown Bank, the Patel Parties failed to act prior to the expiration of the Challenge Deadline.  The Court entered the consensually submitted *Order Withdrawing Motion to Remand and Scheduling Order* on March 6, 2019, which contained a briefing schedule for the Patel Parties' Bankruptcy 59 and 60 Motion.[63]

**The Enforcement Motion**

On March 21, 2019, the Patel Parties filed the Bankruptcy 59 and 60 Motion.[64]  The Bankruptcy 59 and 60 Motion ultimately seeks a reduction of the Delaware Judgment in the amount of $4,194,757.93, which if reduced would concomitantly reduce Crown Bank's claim in the Debtor's bankruptcy case.[65]  On April 1, 2019, Crown Bank filed the instant Enforcement Motion.[66]  In the Enforcement Motion, Crown Bank asserts the Bankruptcy 59 and 60 Motion violates the Final DIP Order because the Patel Parties failed to challenge Crown Bank's liens or claims on or before the Challenge Deadline.[67]  Crown Bank also argues that the Bankruptcy 59 and 60 Motion violates the Final DIP Order because the Final DIP Order determined certain Prepetition Loan Documents were valid and enforceable.  Crown Bank asserts that among those Prepetition Loan Documents is the guaranty of payment dated December 19, 2012, by and among, Chirag P. Patel and Crown Bank (the "**Guaranty Agreement**").[68]  Crown Bank argues that the Guaranty Agreement waives the Patel Parties' right to protest the indebtedness, which is exactly what the Bankruptcy 59 and 60 Motion seeks to do.[69]

Crown Bank further argues that *res judicata* precludes the Patel Parties from filing the Bankruptcy 59 and 60 Motion.  Crown Bank asserts the Patel Parties had the opportunity to raise the issues in the Bankruptcy 59 and 60 Motion regarding Crown Bank's liens or claims by objecting to the DIP Financing Motion or appealing the Final DIP Order.[70]  Crown Bank argues that the Bankruptcy 59 and 60 Motion violates the principles of finality, undermining Crown Bank's ability, as well as others, to rely on post-petition financing orders.[71]  Crown Bank contends that 11 U.S.C. § 364(e) also protects Crown Bank from the relief sought in the Bankruptcy 59 and 60 Motion by preventing challenges to a financing order similarly to how § 364(e) prevents certain appeals.[72]  Finally, Crown Bank argues that the Patel Parties' Bankruptcy 59 and 60 Motion are

estate causes of action, which require derivative standing. Therefore, the Patel Parties must obtain derivative standing to pursue them.[73] Debtor filed a joinder to the Enforcement Motion.[74]

On April 16, 2019, the Patel Parties filed the Opposition.[75] First, the Patel Parties argue that their challenge to Crown Bank's claim is timely, since the Final DIP Order does not explicitly state that a challenge must be brought in the Bankruptcy Court.[76] The Opposition argues in the alternative that the Debtor's *Notice of Removal*[77] on October 15, 2018 and Crown Bank's *Notice of Removal* on November 7, 2018 constitute informal challenges made by the Patel Parties.[78] The Patel Parties then contend that the Final DIP Order only addresses Prepetition Loan Documents executed by Debtor to Crown, and that because Debtor did not execute the Guaranty Agreement, the Guaranty Agreement is excluded. The Patel Parties also assert the Final DIP Order's provision regarding Prepetition Loan Documents does not apply to the Patel Parties because they are not explicitly named in the provision.[79] Alternatively, they argue that the Guaranty Agreement does not prevent a guarantor from defending a creditor's claim on substantive grounds.[80] The Patel Parties then take aim at Crown Bank, alleging that Crown Bank should be judicially estopped from raising untimeliness and other arguments based on Crown Bank's purported "sharp practices."[81]

The Patel Parties respond that *res judicata* is inapplicable to the Bankruptcy 59 and 60 Motion because their "[c]hallenge to Crown Bank's claim involves different parties and issues previously decided by the Bankruptcy Court and do not arise from the same operative facts."[82] The Patel Parties argue that § 364(e) is inapplicable to the Bankruptcy 59 and 60 Motion because the Final DIP Order is not on appeal.[83] The Patel Parties also argue that their claims are direct causes of action rather than derivative. Specifically, the Patel Parties assert the direct cause of action stems from Crown Bank's alleged conduct that impaired the value of certain collateral that would have satisfied the Delaware Judgment.[84] Finally, the Patel Parties argue that if the Court

determines that the Patel Parties' claims are derivative, the Court should grant the Patel Parties retroactive standing.[85]

On April 25, 2019, Crown Bank filed a Reply.[86]  Crown Bank argues that the issue here is whether the Patel Parties obtained derivative standing to bring estate claims, and actually asserted such claims on or before the Challenge Deadline.[87]  In response to the Patel Parties' informal challenge argument, Crown Bank contends it removed the Delaware Action in anticipation of the Patel Parties asserting a timely standing motion and challenge to Crown Bank's liens or claims pursuant to the Final DIP Order.  Crown Bank's ultimate objective at the time it removed the Delaware Action was to consolidate all of the pending matters.  Therefore, Crown Bank argues that the removal should not be determined an informal challenge especially since it was through no affirmative action taken by the Patel Parties.[88]

On May 9, 2019, this Court held a hearing on the Enforcement Motion.  Crown Bank primarily argued that the Patel Parties' Bankruptcy 59 and 60 Motion is an attempt to reduce Crown Bank's liens or claims by approximately $4.2 million, despite Crown Bank's liens or claims receiving certain protections in the Final DIP Order.[89]  Crown Bank asserted that § 364(e) provided protections to both Crown Bank's lending during the pendency of the Debtor's bankruptcy case and to the existing prepetition liens.  The Patel Parties disagreed with Crown Bank on this point, stating that § 364(e) only protects new monies lent during the bankruptcy.  Crown Bank further argued that the Final DIP Order required any party challenging Crown Bank's liens or claims to first obtain standing from this Court.  Crown Bank argued that the Patel Parties failed to obtain standing from this Court, failed to assert a challenge, and therefore, missed the Challenge Deadline entirely.  As per Crown Bank, if the Court agrees with the Patel Parties then ". . . challenge deadlines and objection deadlines don't apply to the Patels."[90]  Ultimately, Crown Bank agreed

15

with the Patel Parties that the Final DIP Order neither addresses nor prevents any party from pursuing direct causes of action.

The Patel Parties argued that their failure to file a formal challenge prior to the expiration of the Challenge Deadline is a mere technicality. The Patel Parties asserted their substantive rights to challenge the underlying decision in the Bankruptcy 59 and 60 Motion are being foreclosed simply based on procedure.[91] The Patel Parties further argued that as guarantors to the Guaranty Agreement, they have a right to contest conduct that affects their deficiency obligation. In support of the Patel Parties' argument that the Bankruptcy 59 and 60 Motion asserts direct causes of action, the Patel Parties for the very first time—since the Patel Parties admittedly never raised the case in any prior pleadings or arguments—argued that *Revel* is instructive here.[92] The Patel Parties argued that the Final DIP Order does not address defenses, just like the sale order failed to do in *Revel*.[93] The Patel Parties asserted that an offset or a defense is not a challenge as defined in the Final DIP Order and, therefore not barred. Both parties agreed at the hearing that the value of the collateral and any diminishment thereto may be defenses that the Patel Parties could potentially raise when Crown Bank pursues its judgment in state court.

After extensive oral argument, the parties requested that the Court refrain from deciding the Enforcement Motion to permit settlement discussions between the parties. On May 29, 2019, Crown Bank informed the Court that the settlement discussions proved unsuccessful. Despite the Enforcement Motion having been fully briefed and argued by both sides, the Patel Parties later sought approval to file additional briefing. Crown Bank opposed the request. The Court denied the request.

## DISCUSSION

### I.    THE PATEL PARTIES FAILED TO OBTAIN STANDING TO CHALLENGE CROWN BANK'S LIENS OR CLAIMS

The parties agree that the Final DIP Order bars derivative claims.  A derivative claim is a general claim, with no particularized injury arising from it, and is considered property of the estate.[94]  The "estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case" and includes a cause of action if ". . . the debtor could have asserted the claim on his own behalf under state law."[95]  A party must have standing to assert derivative claims.  The Third Circuit recognized a bankruptcy court's ability to confer derivative standing to a party that seeks to recover property of the estate on the debtor's behalf.[96]

A claim is direct when it is for an injury that is personal to the claimant and when other creditors have no interest in the claim.[97]  Direct claims do not require a party to obtain standing because they do not belong to the estate.  Here, the Patel Parties argue that the Bankruptcy 59 and 60 Motion asserts direct causes of action and require no standing.  Whereas on the other hand, Crown Bank argues the causes of action are derivative and require a party to obtain standing.

#### A.  The Patel Parties Require Standing to Assert Derivative Claims

Derivative standing requires a party to show three elements: "(1) creditor must have colorable claim, (2) that the trustee unjustifiably refused to pursue, and (3) the permission of the bankruptcy court to initiate the action."[98]  It is the creditor's burden in the first instance to demonstrate it satisfies these prerequisites for derivative standing.[99]  In this case, the Final DIP Order set a procedure for parties seeking to bring derivative claims against Crown Bank.  This procedure expressly requires a party to obtain the permission of this Court to initiate the action. In other words, parties must obtain standing.  The Patel Parties failed to meet the first requirement. The Patel Parties never obtained standing.  In fact, the Patel Parties actively worked toward the

17

opposite.  They vigorously litigated to keep the Bankruptcy 59 and 60 Motion outside of this Court.

The Patel Parties even went so far as to argue that this Court lacked subject matter jurisdiction to

hear the Bankruptcy 59 and 60 Motion.  It was only after the Challenge Deadline expired that the

Patel Parties finally agreed with Crown Bank to permit the Bankruptcy 59 and 60 Motion to be

filed with this Court pursuant to a consensual scheduling order.  Even then, Crown Bank reserved

its rights regarding any action the Patel Parties would take to challenge the Crown Bank liens or

claims.  The Patel Parties missed the Challenge Deadline.

Although the Bankruptcy 59 and 60 Motion may have a personal impact on the Patel

Parties, the motion required standing to the extent the actions pursued in the motion benefit the

creditor body as a whole.  The reduction of Crown Bank's liens or claims benefits the creditor

body as a whole and any action in pursuit constitutes a derivative action.  The Patel Parties lack

standing to assert any derivative actions because they never requested it, as required by the Final

DIP Order.

If the Patel Parties asserted direct claims, personal to them, in the Bankruptcy 59 and 60

Motion, those direct claim are between two third-parties and this Court does not have jurisdiction

to decide them.  Both Crown Bank and the Patel Parties agree the Final DIP Order solely addresses

a Challenge Deadline for derivative claims belonging to the estate.  The parties further agree that

to the extent the Patel Parties' possess defenses as guarantors on the Guaranty Agreement, those

claims are direct.  However, Crown Bank did not concede that the Patel Parties possess any direct

claims.  That may be an issue for another court to decide.

### B. The Patel Parties' Failed to Demonstrate Extraordinary Circumstances Warranting *Nunc Pro Tunc* Relief

Since the Patel Parties failed to obtain standing from this Court before the expiration of the

Challenge Deadline—and, in fact, ignored the deadline altogether—they alternatively request this

18

Court grant them *nunc pro tunc* standing.  In oral argument, the Patel Parties, recognizing they missed the Challenge Deadline, argued that equity requires this Court to grant *nunc pro tunc* standing to allow the Patel Parties to have their day in court.  "[N]*unc pro tunc* approval should be limited to cases where extraordinary circumstances are present."[100]  Simply, it is extraordinary relief.  *Nunc pro tunc*, a Latin phrase, literally means 'now for then' and describes the doctrine permitting the retroactive effect of acts done after the time they should have been done.[101]  "An act *nunc pro tunc* is an 'entry made now of something actually previously done to have effect of former date, [previously] omitted through inadvertence or mistake.'"[102]

The Patel Parties ask for the extraordinary relief of *nunc pro tunc* standing from the Court. Yet they provide no reasons whatsoever, let alone extraordinary reasons, why this Court should grant the relief.[103]  The Patel Parties had many opportunities to challenge Crown Bank's liens or claims in this Court by way of motion practice, initiating adversary proceedings, or by appealing orders entered by the Court.  The Patel Parties only needed to obtain standing to do so, which would then permit them to assert their allegations.  The Final DIP Order established the Challenge Deadline, which was well-known to the Patel Parties.  The Patel Parties failed to adhere to the procedures to obtain standing and meet the Challenge Deadline.  This Court entered five interim orders approving DIP financing prior to the entry of the Final DIP Order.  The Patel Parties' Former Counsel and the Patel Parties' Current Counsel, accompanied on some occasions by individuals comprising the Patel Parties, were present every step of the way.  There is no dispute to the contrary.

For this Court to now grant the Patel Parties *nunc pro tunc* standing to pursue a derivative claim against Crown Bank makes no sense and would heavily prejudice Crown Bank.  The Court purposefully made sure—heeding requests from various parties—that the Final DIP Order

included a sufficient time period for the Challenge Deadline.  The Challenge Deadline gave parties

the opportunity to take up the fight should they wish and challenge Crown Bank's liens or claims.

But, it also provided closure for Crown Bank.  Ultimately, no one challenged.  The relief requested

by the Patel Parties is not equity; it is the opposite.  The Patel Parties aggressively asked the Court

over and over, written and verbally, who would take up the fight against Crown Bank.  Crown

Bank invited the Patel Parties to do so.  Crown Bank's counsel even stated at the October 25, 2018

hearing that the Patel Parties ". . . have pending challenges on the claim.  If they want to come

before your honor, seek standing, and say the Delaware court missed it by $4 million [. . .] they

can come in here and do that."  The Final DIP Order set out the means for accepting Crown Bank's

invitation to challenge its liens or claims.  In the end, the Patel Parties, by failing to act in

accordance with the Final DIP Order, declined the invitation.  The Patel Parties took no actions

that warrant the extraordinary relief requested.  Therefore, the Patel Parties' request for *nunc pro

tunc* standing is denied.

## II.    THE PATEL PARTIES FAILED TO ASSERT EITHER AN EXPRESS CHALLENGE OR AN INFORMAL CHALLENGE

Even if this Court granted the Patel Parties *nunc pro tunc* standing, the Patel Parties still

failed to assert a timely challenge.  The Final DIP Order states: ". . . any challenges to the validity,

extent or priority of the liens or claims of Crown Bank [. . .] must be commenced, subject to

obtaining standing, on or before November 28, 2018 . . . ."[104]

### A.  The Original 59 and 60 Motion and Notices of Removal Fail to Constitute an Express Challenge

Crown Bank asserts that the Bankruptcy 59 and 60 Motion violates the terms of the Final

DIP Order because it ultimately seeks to alter Crown Bank's liens or claims.  Crown Bank argues

that the Patel Parties never challenged the validity or extent of Crown Bank's liens or claims

pursuant to the process approved by the Court in the Final DIP Order and are therefore barred from bringing any challenge. Crown Bank asserts that the procedure for challenging Crown Bank's liens or claims was clearly stated to all parties, specifically on the record at the October 25, 2018 hearing. As stated before, Crown Bank expressly invited the Patel Parties to obtain standing and challenge its liens or claims. Crown Bank argues that it could not have been clearer to the Patel Parties what they needed to do if they wished to challenge Crown Bank's liens or claims.

The Patel Parties respond by asserting that they filed a timely challenge when: (1) they filed the Original 59 and 60 Motion in Delaware state court; (2) Debtor filed a *Notice of Removal* on October 15, 2018;[105] and (3) Crown Bank filed a *Notice of Removal* on November 7, 2018. Crown Bank responds that the Patel Parties neither obtained standing nor filed a challenge.

This Court agrees that the Patel Parties failed to challenge Crown Bank's liens or claims prior to the expiration of the Challenge Deadline. The Patel Parties filed the Original 59 and 60 Motion in another court located in another jurisdiction. Specifically, the Patel Parties filed the Original 59 and 60 Motion in the Delaware state court. It was not filed here and cannot be substituted as a challenge filed in this Court. This is particularly so because the Patel Parties strenuously fought to keep the matter out of this Court—when in fact, they should have been asserting their challenge before this Court so that they could timely meet the requirements of the Final DIP Order. The Patel Parties, instead of relying on their own actions to assert a challenge, rely on the actions of others to support their erroneous position that they filed a timely challenge. Filing a challenge requires affirmative conduct; conduct never exhibited by the Patel Parties. The Original 59 and 60 Motion paired with the Notices of Removal filed by Debtor and Crown Bank fail to constitute any action whatsoever by the Patel Parties. Therefore, they cannot and do not constitute a challenge as required by the Final DIP Order. The Final DIP Order explicitly sets out

21

the procedure a party in interest must follow to challenge Crown Bank's liens or claims, which included first obtaining standing from this Court and then challenging by a certain date. This Court finds the Patel Parties failed to meet either requirement.

### B. Affirmative Actions Taken by Crown Bank Fail to Constitute an Informal Challenge

The Patel Parties assert that if this Court does not determine that the Original 59 and 60 Motion constitutes a proper method for challenging the Final DIP Order, then the Court should determine the Patel Parties made an informal challenge through: (1) multiple forms of notice the Patel Parties gave Crown Bank of the Delaware Action; and (2) Crown Bank filing the *Notice of Removal* in the Delaware district court. To bolster their argument, the Patel Parties rely on a prior decision of this Court.[106]

In *Roper* this Court permitted certain acts to constitute an informal proof of claim. This Court looked to the specific facts of that case through a totality of the circumstances approach based on what the parties did.[107] Specifically, the creditor in that case filed a *Notice of Removal of Civil Claim to Bankruptcy Court*, along with state court pleadings including the creditor's *Answer and Counterclaims*.[108] This Court determined that the principles of equity dictated a determination that the creditor's filings constituted an informal proof of claim.[109] The Patel Parties ask this Court to use the same approach.

The Patel Parties also rely on the *Mata* case to support their position.[110] The court in *Mata* held that a *Notice of Removal* filed by the creditor regarding a creditor's state court lawsuit qualified as an informal proof of claim.[111] The *Mata* Court indicated that its decision was based upon the specific facts of that case and found that equity required the Court to allow the informal proof of claim.[112]

22

Crown Bank asserts that this case is distinguishable from both *Roper* and *Mata*. Crown Bank contends that those cases rely on factual scenarios wherein the creditors affirmatively filed certain pleadings in the bankruptcy court that provided enough notice and information to be considered informal proof of claims.[113] Crown Bank highlights the the fact that the Patel Parties failed to file any notices of removal before this Court. Further, Crown Bank argues that the Patel Parties reliance on the *Notice of Removal* filed by Crown Bank is illogical since Crown Bank would never challenge its own liens or claims. Crown Bank asserts that the Patel Parties mistakenly rely on the multiple forms of notice provided to Crown Bank of its challenge to Crown Bank's liens or claims, and they miss the main takeaway from the *Roper* decision. Crown Bank asserts that in *Roper*: (1) the creditor filed the pleadings in the bankruptcy court; and (2) notice was provided to this Court of the *Roper* creditor's claims. In *Roper,* the bankruptcy court—along with the parties— was on written notice of the creditor's claim, which is not the case here. Crown Bank further distinguishes *Roper* because this case deals with a challenge to a DIP lender's liens or claims allowed through a Final DIP Order, and not an informal proof of claim.

This Court agrees with Crown Bank. Put simply, the Patel Parties rely on activity that took place outside of this Court, asserting that those actions provide notice to this Court. How can activity outside of the Court and unbeknownst to the Court constitute notice to the Court? They cannot. This is not just about notice to Crown Bank. It is also about notice to the Court. Further, any reliance on Crown Bank's actions as a way of asserting a challenge to Crown Bank's liens or claims borders on ridiculous. Why would Crown Bank assert a challenge against itself? Such an act is akin to suing oneself. In the real world, it simply does not happen.

Further, the difference between an informal proof of claim and an informal challenge to a lien or claim permitted in a financing order is a difference between priority and finality. If a party

23

files an allowable late proof of claim, the proof of claim survives but holds a different level of priority.[114]   On the other hand, a challenge to a lien or claim validated and allowed in a post-petition financing final order affects the rights of the lender and all other parties relying on the finality of that order.   Those are much different circumstances and the allowance of equity must be measured through that lens.

The Court established the Challenge Deadline in an order, which neither the Patel Parties nor anyone else appealed.   The Patel Parties only filed two pleadings in the Main Case that mentioned the Original 59 and 60 Motion pending as background material to their joinders.   They also discussed the Original 59 and 60 Motion when they sought to remand the actions removed. However, they failed to ask this Court for standing or to adjudicate the issues until much too late. The purpose of the Challenge Deadline is to prevent guesswork and provide finality.   This Court and Crown Bank are being asked to guess that the Patel Parties wished for this Court to see a challenge to Crown Bank's liens or claims and decide it when every action taken by the Patel Parties says otherwise.   Even when the Delaware Action could have been presented to this Court, the Patel Parties vigorously advocated that this Court could not and should not hear it. Accordingly, this Court finds that the Patel Parties failed to file an informal challenge to Crown Bank's liens or claims.

## III.    *RES JUDICATA* BARS THE BANKRUPTCY 59 AND 60 MOTION

The doctrine of *res judicata* is fully applicable in bankruptcy cases.[115]   It bars not only claims that were brought in a previous action, but also claims that could have been brought.[116]   It ". . . has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation."[117]   Three circumstances must be present for *res judicata* to apply: (1) a final judgment

on the merits in a prior suit; (2) involving the same parties or their privies; and (3) a subsequent

suit based on the same cause of action.[118]  *Res judicata* is applicable to final orders issued by the

bankruptcy court including financing orders, confirmation orders, and claims allowance orders.[119]

In this case, Crown Bank asserts the Final DIP Order precludes the Bankruptcy 59 and 60

Motion under the principle of *res judicata*.  The first prong requiring a final judgment on the merits

in a prior suit is not in dispute here.  All parties acknowledge that no one appealed the Final DIP

Order.  However, the second and third prongs are at issue.

### A. The Patel Parties and Crown Bank are Both Parties to the Bankruptcy 59 and 60 Motion and the Final DIP Order

Crown Bank argues that not only have the Patel Parties been represented by counsel

throughout the Debtor's bankruptcy proceeding, but they also filed an objection to, among other

things, the entry of the Final DIP Order.[120]  Crown Bank relies on *In re Brooks Sand & Gravel,*

*LLC* to assert that the Bankruptcy 59 and 60 Motion is precluded by *res judicata*.  In *Brooks Sand,*

the bankruptcy court held *res judicata* barred the creditor's adversary action seeking to avoid a

bank's liens and disallowance of its claims because of a final financing order.[121]  The *Brooks Sand*

court found that the DIP lender provided proper notice to the creditor of the final financing order

and the creditor had the opportunity to object, which it did.[122]  The court rejected the creditor's

objections.[123]  The creditor failed to appeal those rulings to the district court.[124]  As a result of

creditor's overruled objections and failure to appeal the final financing order, the court held that

the creditor's adversary action was barred by the doctrine of *res judicata*.

In response, the Patel Parties do not address *Brooks Sand* but instead argue that they were

not a party in privity as required by the second prong because: (1) they were not in control of the

process giving rise to the Final DIP Order, unlike the Debtor; and (2) the Patel Parties' interests

were not adequately represented by the Debtor in connection with the Final DIP Order.  To support this position, the Patel Parties rely on *In re Target*.[125]

In *Target*, the Court found that the confirmation order did not preclude the creditor's claims under *res judicata*.[126]  The confirmation order in that case was silent as to counterclaims, defenses, or causes of action against the senior secured lender and expressly reserved the rights of the creditor to bring certain actions on behalf of the trustee and the estate.[127]  The confirmation order did not bar any of the creditor's personal claims against the senior secured lender.[128]  The Patel Parties argue this Court should hold that the Bankruptcy 59 and 60 Motion is not barred by *res judicata* because the Final DIP Order, like the confirmation order in *Target*, does not address the claims in the Bankruptcy 59 and 60 Motion.

Ironically, the Patel Parties fail to address that the bankruptcy court in *Target* held that *res judicata* precluded the creditor from pursing the claims that were encapsulated in the broad release provisions of the final financing order.[129]  The *Target* final financing order established the senior secured lender's liens and claims, released the senior secured lender from all claims arising out of the relationship with the Debtor prior to the order's entry, and bound parties, including successors.[130]  The *Target* court held that creditor was precluded from asserting prepetition claims because the final financing order addressed both the creditor and those prepetition claims.[131]  This Court finds this case to be similar to *Target* in that respect.  This Court agrees with Crown Bank's assertion that the Bankruptcy 59 and 60 Motion is precluded by the doctrine of *res judicata*.  The Patel Parties have themselves been present in this Court on several occasions, have been actively represented by counsel, and filed pleadings and objections throughout this case.  The Court finds that these matters involve the same parties and therefore, the second prong is satisfied.

**B. The Bankruptcy 59 and 60 Motion Challenges the Same Liens or Claims Allowed in the Final DIP Order**

A cause of action should be barred only where "the factual underpinnings, theory of the case, and relief sought against the parties to the proceeding are so close to a claim actually litigated in the bankruptcy that it would be unreasonable not to have brought them both at the same time in the bankruptcy forum."[132]  The Final DIP Order contains Debtor's stipulation to the following:

> "[a]s of the Petition Date, the Debtor was truly and justly indebted to Crown Bank pursuant to the Prepetition Loan Documents, without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $17,618,599.39 in respect of Loans made by Crown Bank . . . ."[133]

Crown Bank asserts that the Final DIP Order established Crown Bank's allowed liens or claims and validated certain prepetition documents.  The Final DIP Order provided these protections to Crown Bank because Crown Bank provided financing to the Debtor during the bankruptcy.  Crown Bank argues the Bankruptcy 59 and 60 Motion seeks to reduce the same liens or claims established in the Final DIP Order by approximately $4 million.

The Patel Parties argue the Bankruptcy 59 and 60 Motion does not address the issues contemplated during entry of the Final DIP Order.  The Patel Parties direct this Court to Access Point's objection to the Cash Collateral Motion and DIP Financing Motion and distinguish Access Point's concerns from the concerns of the Patel Parties.[134]

The Patel Parties miss the mark.  The Patel Parties neglect to address their own objection to the DIP Financing Motion seemingly to obfuscate the issue by directing the Court to look at Access Point as the only objector in this case.[135]  Apparently, the Patel Parties forgot that they too objected.[136]  This Court considered all objections throughout the case and when the Final DIP Order was entered.  The Patel Parties had multiple opportunities to file objections to the interim post-petition financing.  They also had the opportunity to obtain standing and initiate a challenge

to Crown Bank's liens or claims.  The Patel Parties could have appealed the Final DIP Order. Instead, the Patel Parties did nothing.  The Patel Parties participated both in writing and vocally in the case.  The Final DIP Order set forth guidelines of what parties needed to do to challenge a portion of Crown Bank's liens or claims.  The Patel Parties for whatever reason chose to do nothing.  Now they have decided they wish to take action in this Court.  *Res judicata* bars their attempt.  The Patel Parties are barred from asserting the Bankruptcy 59 and 60 Motion.

### IV.    11 U.S.C.  § 364(e)

Crown Bank argues 11 U.S.C. § 364(e) applies to this matter by way of analogy, and seeks the protections afforded post-petition claims under this section. The Patel Parties contend that the § 364(e) is inapplicable to the instant matter because the plain language of the statute indicates § 364(e) applies to appeals. The Court has already decided that the Bankruptcy 59 and 60 Motion is in violation of the Final DIP Order and precluded by *res judicata*.  Therefore, the Court need not address Crown Bank's § 364(e) argument.

## **CONCLUSION**

Based on the foregoing, Crown Bank's Enforcement Motion is GRANTED.  Consequently, the Patel Parties' Bankruptcy 59 and 60 Motion is DENIED with prejudice.  An appropriate Order will be entered by the Court.

DATED: December 5, 2019

Honorable Stacey L. Meisel
United States Bankruptcy Judge

---

[1] *Final Order (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection, (III) Authorizing Debtor to Obtain Postpetition Financing, and (IV) Granting Liens and Superpriority Claims to the DIP Lender* (the "**Final DIP Order**"), Case No. 18-26567 ("**Main Case**"), Docket No. 233.

[2] *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009).

[3] *In re River Ctr. Holdings LLC*, 394 B.R. 704, 711 (Bankr. S.D.N.Y. 2008).

[4] Docket No. 25-1 at 2 (all Docket citations refer to Adversary Proceeding, Case No. 19-01053, unless indicated otherwise).

[5] Docket No. 19-2 at 2.

[6] Docket No. 25-1 at 3.

[7] *Id.*

[8] Docket No. 19-2 at 2.

[9] *Id.* at 3.

[10] Docket No. 25-1 at Ex. C.

[11] *Id.* at 4.

[12] *Id.* at Ex. D.

[13] *Id.* at n.1.

[14] *Id.*

[15] Main Case Docket No. 1.

[16] *Motion for Interim and Final Orders Authorizing Debtor to (I) Obtain Postpetition Financing Pursuant to 11 U.S.C. § 105, 362, and 364, (II) Granting Liens and Superpriority Claims to the DIP Lender Pursuant to 11 U.S.C. § 364(c), and (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001* (the "**DIP Financing Motion**"), Main Case Docket No. 23.

[17] *See* Main Case Docket No. 49-1.

[18] *Id.* at 16.

[19] *Interim Order (I) Authorizing Debtor to Obtain Postpetition Financing, (II) Granting Liens and Superpriority Claims to the DIP Lender, and (III) Scheduling a Final Hearing* (the "**First Interim DIP Order**"), Main Case Docket No. 58.

[20] Main Case Docket No. 91.

[21] *Motion of Access Point Financial, Inc., to Appoint a Chapter 11 Trustee or, Alternatively, to Convert Proceeding to a Case Under Chapter 7 of the Bankruptcy Code* (the "**Motion to Appoint Trustee**"), Main Case Docket No. 54.

[22] *Joinder of BCD Associates LLC and the Patel Parties in Motion of Access Point Financial, Inc., to Appoint a Chapter 11 Trustee, or, Alternatively, to Convert Proceeding to a Case Under Chapter 7 of the Bankruptcy Code* (the "**Joinder to Appoint a Trustee**"), Main Case Docket No. 92.

[23] *Id.* at 3.

[24] Only Debtor's counsel and Jacinto Rodrigues, Chief Executive Officer of Crown Investment C Corp., MRPC's sole member, appeared in court at that hearing.

[25] Respectively: (1) *Motion for an Interim Order and a Final Order (i) Prohibiting Utility Companies from Discontinuing, Altering, or Refusing Service; (ii) Deeming Utility Companies to have Adequate Assurance of Payment; and (iii) Establishing Procedures for Resolving Requests for Additional Assurance Pursuant to 11 U.S.C. §§ 105(a) and 366* (the "**Utility Motion**"), Main Case Docket No. 6; (2) *Motion for Administrative Order Pursuant to 11 U.S.C. 105(a) and 331 Establishing Certain Procedures for the Allowance of Interim Compensation and Reimbursement of Expenses of Professionals Retained by Order of this Court* (the "**Motion for Administrative Fee Order**"), Main Case Docket No. 14; (3) *Application for Retention of Professional* (the "**Trenk Retention Application**"), Main Case Docket No. 9; (4) Main Case Docket No. 23; and (5) *Motion Pursuant to 11 U.S.C. §§ 105, 363(c)(2)(B), 363(e), 507(b), Fed. R. Bankr. P. 4001(b), and D.N.J. L.B.R. 4001-4 For Interim and Final Orders Authorizing Use of Cash Collateral* (the "**Cash Collateral Motion**"), Main Case Docket No. 4.

[26] Main Case Docket No. 53.

[27] Main Case Docket No. 100 at 3. Debtor added paragraph 4.

[28] *Second Interim Order (I) Authorizing Debtor to Obtain Postpetition Financing, (II) Granting Liens and Superpriority Claims to the DIP Lender, and (III) Scheduling a Final Hearing* (the "**Second Interim DIP Order**"), Main Case Docket No. 100.

[29] Main Case Docket No. 138.

[30] *See* Adv. Pro. No. 18-01463, Docket No. 1. Debtor filed the adversary complaint against numerous creditors, including the Patel Parties, to determine the nature, extent, and validity of certain liens pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007.

[31] Main Case Docket Nos. 54 and 23; *Motion for Orders (I) Approving (A) Bidding Procedures (B) Form and Manner of Sale Notices, and (C) Sale Hearing Date and (II) Authorizing and Approving Sale of Substantially All of Debtor's Assets Free and Clear of Liens, Claims, and Encumbrances* (the "**Sale Procedures Motion**"), Main Case Docket No. 15.

[32] Main Case Docket No. 143 (referencing Adv. Pro. No. 18-01463).

[33] Main Case Docket No. 154.

[34] *Id.* at 1 ("In addition, since 2015 our clients have all been actively involved in still pending litigation with Crown Bank in a Delaware State Court all concerning the loans asserted by the bank as obligations of the Debtor, thus giving them a clear view into the prospects for a resolution of disputes through alternatives to litigation whether they be mediation or efforts to reach a conclusion by unsupervised compromise").

[35] Motion of Access Point Financial, Inc., to Appoint a Chapter 11 Trustee or, Alternatively, to Convert Proceeding to a Case Under Chapter 7 of the Bankruptcy Code (the "**Motion to Appoint Trustee**"), Main Case Docket No. 54.

[36] *Third Interim Order (I) Authorizing Debtor to Obtain Postpetition Financing, (II) Granting Liens and Superpriority Claims to the DIP Lender, and (III) Scheduling a Final Hearing* (the "**Third Interim DIP Order**"), Main Case Docket No. 174.

[37] *Id.* at 4.

[38] *Debtor's Motion to Approve Post-Petition Retainer to McManimon, Scotland & Baumann, LLC* (the "**Motion to Approve Post-Petition Retainer**"), Main Case Docket No. 170.

[39] Main Case Docket Nos. 53 and 136.

[40] Main Case Docket No. 292 at 21:18-21.

[41] *Fourth Interim Order (I) Authorizing Debtor to Obtain Postpetition Financing, (II) Granting Liens and Superpriority Claims to the DIP Lender, and (III) Scheduling a Final Hearing* (the "**Fourth Interim DIP Order**"), Main Case Docket No. 184.

[42] *Motion by the Acting United States Trustee for an Order Pursuant to 11 U.S.C. § 1104 Directing the Appointment of a Chapter 11 Trustee* (the "**UST's Motion to Appoint a Trustee**"), Main Case Docket No. 129.

[43] *Joinder and Omnibus Objection of BCD Associates LLC and the Patel Parties Regarding Matters Set for Hearing on October 25, 2018* (the "**Joinder and Omnibus Objection**"), Main Case Docket No. 201.

[44] *Motion of the Debtor for an Order Approving Settlement and Compromise By and Among the Debtor, Access Point Financial, Inc., and Crown Bank Pursuant to Fed. R. Bankr. P. 9019(a)* (the "**Access Point Settlement Motion**"), Main Case Docket No. 191.

[45] *See* Main Case Docket No. 201.

[46] *Id.* 201 at 4-6.

[47] *Id.* at 7-8 (emphasis in original).

[48] Respectively, Main Case Docket Nos. 215 and 216.

[49] Respectively, (1) Main Case Docket No. 129; (2) Main Case Docket No. 191; (3) Main Case Docket No. 23; (4) Main Case Docket No. 4; Main Case Docket No. 15; and (6) *Motion for Authority to Enter into Consulting Agreement with Edward P. Bond Engaging Mr. Bond as Independent Manager* (the "**Independent Manager Motion**"), Main Case Docket No. 87.

[50] October 25, 2018 Hearing at 1:55:51, Main Case Docket No. 440.

[51] *Fifth Interim Order dated October 26, 2018 (I) Authorizing Debtor to Obtain Postpetition Financing, (II) Granting Liens and Superpriority Claims to the DIP Lender, and (III) Scheduling a Final Hearing* (the "**Fifth Interim DIP Order**"), Main Case Docket No. 222.

[52] *See* Main Case Docket Nos. 191, 87, 23, 4, and 15.

[53] Main Case Docket No. 233.

[54] *Id.* at 17-18.

[55] *Id.* at 6.

[56] *Order Approving Settlement and Compromise By and Among the Debtor, Access Point Financial, Inc., and Crown Bank Pursuant To Fed. R. Bankr. P. 9019(a)* (the "**Order Approving Access Point Settlement**"), Main Case Docket No. 234.

[57] Claim No. 14.

[58] Docket No. 19-2 at 3.

[59] Respectively, Docket Nos. 4 and 5.

[60] Respectively, Docket Nos. 6 and 7.

[61] Docket No. 19-1 at 5.

[62] Docket No. 1.

[63] Docket No. 15.

[64] *Post-Trial Motion for Relief Under Rules 59 and 60* (the "**Bankruptcy 59 and 60 Motion**"), Docket No. 17.

[65] Docket No. 17 at 2.

[66] Docket No. 19.

[67] Docket No. 19-1 at 9.

[68] *Id.* at 10.

[69] *Id.*

[70] *Id.* at 11.

[71] *Id.* at 13.

[72] *Id.* at 14.

[73] *Id.* at 15.

[74] *Joinder of Debtor to Crown Bank's Motion to Enforce the Terms of the Final DIP Order*, Docket No. 24.

[75] *Brief in Opposition to Motion to Enforce Terms of the Final DIP Order* (the "**Opposition**"), Docket No. 25.

[76] *Id.* at 12.

[77] Adv. Pro. No. 18-01514, Docket No. 1.

[78] *Id.* at 13-14.

[79] *Id.*

[80] *Id.* at 19.

[81] *Id.* at 17-18.

[82] *Id.*

[83] *Id.* at 23.

[84] *Id.* at 24.

[85] *Id.* at 25-26.

[86] *Crown Bank's Reply in Support of Motion to Enforce the Terms of the Final DIP Order* (the "**Reply**"), Docket No. 29.

[87] *Id.* at 5.

[88] *Id.* at 5-6.

[89] Docket No. 35 at 6:13-8:2.

[90] *Id.* at 26:23-24.

[91] *Id.* at 31:18-24.

[92] *See In re Revel AC, Inc.*, 802 F.3d 558 (3d Cir. 2015).

[93] *Id.* at 36:1-37:11.

[94] *Id.*

[95] 11 U.S.C. § 541(a)(1); *see also In re Emoral, Inc.*, 740 F.3d 875, 879 (3d Cir. 2014).

[96] *See Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery,* 330 F.3d 548, 580 (3d Cir. 2003).

[97] *See Emoral,* 740 F.3d at 879.

[98] *In re Yes! Entm't Corp.,* 316 B.R. 141, 145 (D.Del. 2004).

[99] *In re G—I Holdings, Inc.*, 313 B.R. 612, 628 (Bankr. D.N.J. 2004) (Gambardella, J.).

[100] *In re Arkansas Co., Inc.,* 798 F.2d 645, 649 (3d Cir. 1986).

[101] *Brown v. Warden Canaan USP*, 2019 WL 1384312, at *2 n.1 (3d Cir. 2019) (citing *Barden v. Keohane,* 921 F.2d 476, 477 n.2 (3d Cir. 1990)).

[102] *Barden*, 921 F.2d at 477 n.2 (quoting BLACK'S LAW DICTIONARY at 964 (5th ed. 1979)).

[103] *See Arkansas,* 798 F.2d at 649.

[104] Main Case Docket No. 233 at 17-18.

[105] Adv. Pro. No. 18-01514, Docket No. 1.

[106] *See In re Roper and Twardowsky*, 2017 WL 3311222, at *1 (Bankr. D.N.J. July 5, 2017) (Meisel, J.).

[107] *Roper*, 2017 WL 3311222 at *8.

[108] *Id.* at *4.

[109] *Id.* at *11.

[110] *Mata v. Schoch,* 337 B.R. 138, 141 (S.D. Tex. 2005).

[111] *Id.*

[112] *Id.* at 142.

[113] *See Roper,* 2017 WL 3311222 at *8; *see also Mata*, 337 B.R. at 141.

[114] *See* 11 U.S.C. §726(a)(3).

[115] *In re Galluzzo*, 2018 WL 4191476, at *22 (Bankr. D.N.J. Aug. 14, 2018) (Meisel, J.).

[116] *Id.* (citing *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008)) (further citations omitted).

[117] *Id.* (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979)).

[118] *Id.* (citing *Mullarkey*, 536 F.3d at 225) (further citations omitted).

[119] *In re Target Indus. Inc.,* 328 B.R. 99, 115 (Bankr. D.N.J. 2005) (Gambardella, J.).

[120] *See* Main Case Docket No. 201.

[121] *In re Brooks Sand and Gravel, LLC*, 361 B.R. 477, 479–80 (Bankr. W.D. Ky. 2007).

[122] *Id.*

[123] *Id.*

[124] *Id.*

[125] *See Target*, 328 B.R. at 117-18.

[126] *Id.*

[127] *Id.*

[128] *Id.*

[129] *Id.* at 116.

[130] *Id.*

[131] *Id.*

[132] *Galluzzo*, 2018 WL 3311222 at *8 (quoting *E. Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 337–38 (3d Cir. 2000)).

[133] Main Case Docket No. 233 at 6.

[134] *See* Main Case Docket No. 53.

[135] *See* Main Case Docket No. 201.

[136] *See Id.*